**Pages 1 - 28**

                     UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

RICHARD KADREY, et al.,          )
                                 )
             Plaintiffs,          )
                                 )
   VS.                            )    **NO. C 23-03417 VC**
                                 )
META PLATFORMS, INC., a           )
Delaware corporation,             )
                                 )
             Defendant.           )
_____)
CHRISTOPHER FARNSWORTH, et al.,)
                                 )
             Plaintiffs,          )
                                 )
   VS.                            )    **NO. C 24-06893 VC**
                                 )
META PLATFORMS, INC., a           )
Delaware corporation,             )
                                 )
             Defendant.           )
_____)
                          San Francisco, California
                          Friday, October 4, 2024


             **TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiffs:
                     JOSEPH SAVERI LAW FIRM
                     555 Montgomery Street - Suite 1210
                     San Francisco, California  94111
               BY:  **JOSEPH R. SAVERI, ATTORNEY AT LAW**
                     **CHRISTOPHER K.L. YOUNG, ATTORNEY AT LAW**

           **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

```
 1   APPEARANCES:   (via videoconference, continued)

 2   For Plaintiffs:
                          BOIES SCHILLER FLEXNER LLP
 3                        333 Main Street
                          Armonk, New York  10504
 4                   BY:  DAVID BOIES, ATTORNEY AT LAW

 5                        BOIES SCHILLER FLEXNER LLP
                          1401 New York Avenue, NW
 6                        Washington, DC  20005
                     BY:  JESSE M. PANUCCIO, ATTORNEY AT LAW
 7
                          BOIES SCHILLER FLEXNER LLP
 8                        44 Montgomery Street - 41st Floor
                          San Francisco, California  94104
 9                   BY:  MAXWELL V. PRITT, ATTORNEY AT LAW

10                        BUTTERICK LAW
                          1920 Hillhurst Avenue - Suite 406
11                        Los Angeles, California  90027
                     BY:  MATTHEW BUTTERICK, ATTORNEY AT LAW
12
                          CAFFERTY CLOBES MERIWETHER & SPRENGEL
13                        135 South LaSalle Street - Suite 3200
                          Chicago, Illinois  60603
14                   BY:  ALEXANDER SWEATMAN, ATTORNEY AT LAW

15                        DiCELLO LEVITT LLC
                          Ten North Dearborn Street - 6th Floor
16                        Chicago, Illinois  60602
                     BY:  AMY E. KELLER, ATTORNEY AT LAW
17
                          LIEFF CABRASER HEIMANN & BERNSTEIN LLP
18                        275 Battery Street - 29th Floor
                          San Francisco, California  94111
19                   BY:  DANIEL M. HUTCHINSON, ATTORNEY AT LAW
                          ELIZABETH J. CABRASER, ATTORNEY AT LAW
20                        REILLY T. STOLER, ATTORNEY AT LAW

21                        LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                          250 Hudson Street - 8th Floor
22                        New York, New York  10013
                     BY:  RACHEL GEMAN, ATTORNEY AT LAW
23

24            (APPEARANCES CONTINUED ON THE FOLLOWING PAGES)

25
```

```
 1  │ APPEARANCES:  (via videoconference, continued)
    │
 2  │ For Plaintiffs:
    │
 3  │                     COWAN DeBAETS ABRAHAMS & SHEPPARD LLP
    │                     60 Broad Street - 30th Floor
 4  │                     New York, New York  10004
    │                BY:  CECE COLE, ATTORNEY AT LAW
 5  │                     SCOTT J. SHOLDER, ATTORNEY AT LAW
    │
 6  │                     COWAN DeBAETS ABRAHAMS & SHEPPARD LLP
    │                     9454 Wilshire Boulevard - Suite 901
 7  │                     Beverly Hills, California  90212
    │                BY:  NANCY E. WOLFF, ATTORNEY AT LAW
 8  │
    │ For Defendant:
 9  │                     COOLEY LLP
    │                     1333 2nd Street - Suite 400
10  │                     Santa Monica, California  90401
    │                BY:  BOBBY A. GHAJAR, ATTORNEY AT LAW
11  │
    │                     COOLEY LLP
12  │                     Three Embarcadero Center - 20th Floor
    │                     San Francisco, California  94111
13  │                BY:  KATHLEEN R. HARTNETT, ATTORNEY AT LAW
    │                     MARK WEINSTEIN, ATTORNEY AT LAW
14  │
    │                     CLEARY GOTTLIEB STEEN & HAMILTON LLP
15  │                     1841 Page Mill Road - Suite 250
    │                     Palo Alto, California  94304
16  │                BY:  ANGELA DUNNING, ATTORNEY AT LAW
    │
17  │
    │
18  │
    │
19  │
    │
20  │
    │
21  │
    │
22  │
    │
23  │
    │
24  │
    │
25  │
```

```
 1   Friday - October 4, 2024                          1:05 p.m.

 2                       P R O C E E D I N G S

 3                            ---oOo---

 4        THE CLERK:  Now calling civil cases 23-3417, Kadrey,

 5   et al. versus Meta Platforms, Inc. and 24-6893, Farnsworth

 6   versus Meta Platforms, Inc.

 7        Will Counsel please state your appearances for the record

 8   starting with the Plaintiff for Kadrey.

 9        MR. SAVERI:  Good afternoon, Your Honor, Joseph Saveri

10   for the Plaintiffs.

11        THE COURT:  Hi.

12        MR. BOIES:  Good afternoon, Your Honor, David Boies of

13   Boies Schiller Flexner for the Plaintiffs.

14        THE COURT:  Hi.

15        MR. YOUNG:  Good afternoon, Your Honor, Chris Young,

16   Joseph Saveri Law Firm for the Kadrey Plaintiffs.

17        THE COURT:  Hi.

18        MR. SWEATMAN:  Good afternoon, Your Honor, Alex

19   Sweatman from Cafferty Clobes Meriwether & Sprengel on behalf

20   of the Plaintiffs.

21        THE COURT:  Hi.

22        MR. PRITT:  Good afternoon, Your Honor, Maxwell Pritt,

23   Boies Schiller Flexner for the Plaintiffs.

24        THE COURT:  Hi.

25        MS. KELLER:  Good afternoon, Your Honor, Amy Keller,
```

1    DiCello Levitt LLP on behalf of Plaintiffs.

2              **THE COURT:**  Hi.

3              **MR. PANUCCIO:**  Good afternoon, Your Honor, Jesse

4    Panuccio with Boies Schiller also for Plaintiffs.

5              **THE COURT:**  Hi.

6              **MR. BUTTERICK:**  Your Honor, good afternoon, Matthew

7    Butterick for the Kadrey Plaintiffs.

8              **THE COURT:**  Hi.  Is that it for the Kadrey Plaintiffs?

9                        (No response.)

10             **THE COURT:**  I think so.  All right.  Who else do we

11   have?

12             **MS. GEMAN:**  Good afternoon, Your Honor, for the

13   Farnsworth Plaintiff Rachel Geman, Lieff Cabraser.

14             **THE COURT:**  Hi.

15             **MR. STOLER:**  Good afternoon, Reilly Stoler also with

16   Lieff Cabraser Heimann & Bernstein also for the Farnsworth

17   Plaintiff.

18             **THE COURT:**  Hello.

19             **MS. CABRASER:**  Good afternoon, Your Honor, Elizabeth

20   Cabraser of Lieff Cabraser for the Kadrey Plaintiffs as well.

21             **THE COURT:**  Hi.

22             **MR. HUTCHINSON:**  Good afternoon, Your Honor, Daniel

23   Hutchinson of Lieff Cabraser Heimann & Bernstein.

24             **THE COURT:**  Hi.

25             **MR. SHOLDER:**  Good afternoon, Your Honor, Scott

1    Sholder from Cowan DeBaets Abrahams & Sheppard also on behalf

2    of the Farnsworth Plaintiffs.

3         **THE COURT:**  Hi.

4         **MS. COLE:**  Good morning, CeCe Cole from Cowan DeBaets

5    Abrahams & Sheppard also on behalf of the Farnsworth Plaintiff.

6         **THE COURT:**  Hi.

7         **MS. COLE:**  And as a panelist, there is also Nancy

8    Wolff from Cowan DeBaets Abrahams & Sheppard on behalf of the

9    Farnsworth Plaintiff.

10         **THE COURT:**  Okay, hi.  Is that it for Farnsworth?

11                        (No response.)

12         **THE COURT:**  Okay.

13         **MS. GEMAN:**  Yes, Your Honor.

14         **MR. GHAJAR:**  Good afternoon, Your Honor, Bobby Ghajar

15    from Cooley on behalf of Defendant Meta Platforms.

16         **THE COURT:**  Okay.

17         **MS. HARTNETT:**  Good afternoon, Your Honor, Kathleen

18    Hartnett also from Cooley for Meta.

19         **THE COURT:**  Hi.

20         **MR. WEINSTEIN:**  Good afternoon, Your Honor, Mike

21    Weinstein also from the Cooley firm and also for Defendant.

22         **MS. DUNNING:**  And I think perhaps last, Angela Dunning

23    from Cleary Gottlieb on behalf of Meta.  Good afternoon,

24    Your Honor.

25         **THE COURT:**  Good afternoon.  All right, the party is

1    growing.  Welcome, everybody.

2         Does -- I don't really know what to do right now.  Does

3    anybody have any ideas on how we should proceed given the size

4    of the party now?

5         **MR. BOIES:**  Your Honor, this is David Boies.  I would

6    suggest there may be a couple of threshold issues.  One is

7    whether the recently case filed [sic] is a related case.  I

8    think everybody agrees that it is a related case.

9         **THE COURT:**  Yeah, and I think I granted the motion to

10   relate; but if I didn't, I will do so -- if I haven't already,

11   that's granted.  The cases are related.

12        **MS. GEMAN:**  It was granted, Your Honor.  Thank you.

13        **THE COURT:**  Okay.

14        **MR. BOIES:**  And then I think a second issue is what is

15   the schedule and whether there is going to be an extension of

16   the schedule and related to that is how the recently filed

17   litigation is coordinated with the existing litigation.

18        **THE COURT:**  Right.  And, I mean, it may be that the

19   latter question should be answered first; right.

20        I mean, usually when we get two basically identical

21   proposed class actions -- and I actually don't know for sure if

22   they are basically identical but it seems like they are -- you

23   know, usually when we had two basically identical proposed

24   class actions, we kind of make a decision about how they are --

25   how they are going to proceed.

1      And one thing we sometimes do is that we consolidate both

2  of them and then we appoint lead counsel, right, to represent

3  the proposed class.

4      Sometimes we will stay the later filed case and allow the

5  earlier filed case to go forward or if there's a good reason,

6  sometimes we might stay the earlier filed case and allow the

7  later case to go forward although that is exceedingly rare;

8  right.  I would think there would have to be a very good reason

9  for that.

10      So, it strikes me that maybe before we talk about what we

11  are going to do with the schedule, we need to figure out how

12  these cases are going to operate together.

13          **MS. HARTNETT:**  Your Honor, I would be happy to speak

14  to that from Meta's perspective when appropriate.

15          **THE COURT:**  Go for it.

16          **MS. HARTNETT:**  Your Honor, from our point of view, the

17  newly filed case should be stayed.  It has been related as

18  Your Honor noted.  It could have been filed long ago in terms

19  of being part of the party.  The party has been going on.

20      We have had several cases that were consolidated together.

21  The schedule has been proceeding.  We can talk about the

22  request for an extension, but we don't believe the new case

23  should change the calculus about how to resolve the existing

24  case.

25          **THE COURT:**  Okay.  And, Mr. Boies, what's your view on

1    that?

2         **MR. BOIES:**  I agree, Your Honor, that the new case

3    should not change the schedule that the Court would otherwise

4    set.

5         I think the case could be stayed.  I think that we have

6    not had a chance to consult -- at least I have not with the

7    Counsel for the recently filed case.

8         So, in terms of how they are integrated with the existing

9    case or whether it is stayed, it's not something I have a point

10   of view on.

11        I do, though, agree with Counsel for Meta that the

12   addition of this case should not delay the schedule that the

13   Court would otherwise set.

14        **THE COURT:**  Okay.  And then whoever is speaking for

15   the Farnsworth Plaintiffs, what's your view on -- you know, how

16   the cases should proceed --

17        **MS. GEMAN:**  Thank you, Your Honor.

18        **THE COURT:**  -- in relation to one another?

19        **MS. GEMAN:**  Thank you, Your Honor, Rachel Geman.

20        We believe with some but not all of what has been said.

21   Certainly the filing of our case is not meant to itself cause a

22   delay in the proceedings.  We are here to bring our experience

23   in these cases to help -- to work and to help safeguard the

24   interest of book authors.

25        We -- as Mr. Boies says, we have not had the chance to

speak directly with him; but we have been in collaborative

touch with certain of the parties.

     And whether Your Honor would be inclined to, perhaps,

consolidate for pretrial purposes or have the cases proceed in

tandem, we think that would be the most sort of procedurally

efficacious.

     Certainly we are in no way trying to stay the first filed

case nor are we trying to stay ourselves.  We are here to work

collaboratively mindful of Your Honor's directive in late

September that an augmented team might benefit the larger

class.

     **THE COURT:**  Right.  I mean, the -- the idea of both

cases proceeding in tandem and -- but remaining separate -- I

mean, you were suggesting that they sort of be coordinated

together for pretrial purposes but remain separate and have --

I guess I don't understand that.

     I mean, to the extent it's the same class that you-all are

proposing to represent, right, I mean, what we usually do is we

decide who is going to be lead counsel to represent that class

or that proposed class.  And to the extent that you-all are

competing, you know, to represent the proposed class, I think I

have to decide who is going to be lead counsel.

     And or to the extent that you are proposing that, you

know, the cases be consolidated and that you -- you know, both

the Cabraser firm and the Boies firm serve jointly as lead

1    counsel and will work together, I mean, I could entertain that

2    too, I suppose; but I -- I'm not totally sure I understand what

3    your proposal was.

4        But to the extent that you are suggesting that the cases

5    should remain separate and such that there could potentially be

6    two class action trials, I mean, that doesn't make any sense,

7    right, to the extent it is the same proposed class.  I mean,

8    there needs to be one -- one case -- one motion for class

9    certification and one class action trial if a trial is

10   ultimately needed.  And then -- and I think there needs -- you

11   know, we need to figure out who lead counsel for the class is

12   going to be.

13       And so, it strikes me that that's -- one option is to go

14   that route, and the other option is to stay the later filed

15   case.  And, you know, I think those are the only two reasonable

16   options.

17       I'm happy to hear suggestions for other reasonable

18   options, but I think those are probably the only two.

19          **MS. GEMAN:**  Thank you, Your Honor.  It is helpful as a

20   gating issue.  Your Honor is correct, that there is certainly

21   overlap in the classes.  Our class is a little bit different

22   than the Kadrey class insofar as it is more limited, but

23   certainly we understand that is arguably sort of a subset of

24   the larger class in the other case.

25          **THE COURT:**  How is it more -- how is it more limited?

1          **MS. GEMAN:**  Our class, Your Honor, is limited to

2    authors with registered copyrights -- and I'm looking at

3    paragraph 55 of our complaint -- whose works were used by Meta

4    for LLM training and research development.

5       We also have a feature of the class where the works are

6    assigned an ISBN number, but I think the high-level point is

7    these are book authors with registered copyrights.

8          **THE COURT:**  Okay.  As opposed to -- and remind me what

9    the proposed class is in the earlier filed case.

10         **MS. GEMAN:**  Yes, Your Honor.  The case there is

11   copyright holders, more generally.  I believe theirs is all

12   persons or entities domiciled in the U.S. that own a U.S.

13   copyright and any work that was used as training data for any

14   version of the language models.

15      So, they are both -- as all class definitions, they are

16   perhaps both a little wordy, but ours is essentially more

17   narrow in a couple of respects.

18         **THE COURT:**  Okay.

19         **MS. GEMAN:**  With respect to Your Honor's question,

20   though -- and I don't think this detracts from Your Honor's

21   point that you see two options -- I think certainly our

22   preference would be to continue to speak collaboratively with

23   the current counsel to see if there is a proposal for

24   consolidation or if Your Honor wanted to consolidate at this

25   point, it's certainly -- that would be our preference rather

1    than being stayed.

2         MS. HARTNETT:  Your Honor, if I may for Meta -- this

3    is Kathleen Hartnett -- the reason why we took the position of

4    staying is that case, as you can tell, there already are a lot

5    of counsel involved here -- and we can talk more about it when

6    we get to the issue of scheduling -- but our client has been

7    continuing to make its best efforts to create the full record

8    that Your Honor asked for.

9         And so, our main concern at this point -- where the case

10   has been bifurcated, we are not even at the class stage yet --

11   is just to try to get through the discovery efficiently so that

12   you can have your summary judgment motions.

13        And so, I think we are just concerned that we don't

14   really -- we are indifferent to which counsel we oppose in the

15   sense that we just want to litigate this case efficiently; and

16   we just see this as potentially complicating things further by

17   adding another Plaintiff and other issues where it is already

18   complicated enough.

19        And I would like to speak to the scheduling issues too

20   because I think that may inform -- you know, as much as there

21   was concern about is the record coming together, you know,

22   hopefully it is.

23        THE COURT:  Okay.  Go ahead and what do you want to

24   say about the scheduling stuff?

25        MS. HARTNETT:  Well, I guess I will say two things.

1    One is that unfortunately, you know, existing counsel has not

2    heeded your admonition fully at the September 20th hearing

3    about completing the discovery within two weeks of the close.

4        Since that hearing, they have actually cancelled three

5    depositions of Meta witnesses.  They didn't take a date for

6    another one, the Chief AI Researcher; and we still have to

7    schedule two other depositions, the 30(b)(6) and the deposition

8    that was ordered of Mr. Zuckerberg.

9        They did take one deposition yesterday of Meta's head

10   of -- Vice President for AI, and they took two others.

11       Meanwhile, Plaintiffs have actually completed all -- we

12   have completed our depositions of Plaintiffs, seven of them,

13   except for three next week.  Two witnesses have been sick.  One

14   was out of the country.

15       So, from our perspective, we are wrapping things up the

16   way Your Honor contemplated.  Unfortunately, kind of rather

17   than just complete the discovery that they were given and make

18   that full record, they have not done that but have re-filed

19   this motion.

20       And so, what we -- our perspective at this point is

21   they -- just right before the call today offered -- asked us to

22   get dates for the three that they had cancelled.  We are happy

23   to provide those.  We would like to complete the depositions

24   that were ordered.  Complete the tie up issues in discovery and

25   get this to expert discovery, which is going to be an important

1    part of the summary judgment record.

2         So, I just say that only for two reasons, which is, one,

3    the renewed motion to extend the case schedule, we respectfully

4    submit should not be well taken because they haven't really

5    progressed much more than before but just are making the same

6    arguments again.

7         **THE COURT:**  Although I assume -- to be fair, I mean, I

8    assume -- they haven't spoken to this -- I'm assuming what

9    happened with the three depositions that were cancelled is new

10   counsel has come in.  New counsel is probably going to be

11   taking those depositions, and they are not ready to take the

12   depositions yet and --

13        **MS. HARTNETT:**  That actually -- that was not the case.

14   Oh, they did cancel at least one after new counsel.  What they

15   wanted to do was have -- expand the number of custodians, and

16   they wanted to get those custodial documents before the

17   deposition.  And then Magistrate Judge Hixson this week ruled

18   they were too late in asking for that.

19        And so, we were happy to proceed with those depositions

20   because we had scheduled them in the -- we had scheduled two in

21   the UK; having a witness from France come to the UK to make

22   sure that it was easier for them to take the discovery, and we

23   had another deposition scheduled.

24        So, and so far existing counsel has been taking the

25   depositions.  So, from our perspective, this really is at the

1   end of the road.  We are there.  The end is in sight, and I

2   think we keep getting distracted from that by these repetitive

3   motions; and all they need to do is take the six remaining

4   depositions they have and then they will have the record they

5   need.

6       **MR. BOIES:**  Your Honor, if I could address that first,

7   I think the Court is correct; that the depositions that were

8   cancelled are depositions that new counsel intends to take.

9       I don't want to get into my very first appearance before

10  the Court sort of back-and-forth with Meta's counsel; but I

11  don't think it is fair to say that the -- that the issue here

12  is exclusively one on the Plaintiffs' side.

13      Yesterday there was a substantial production of additional

14  source code from the Defendant that we have not yet had an

15  opportunity to review.

16      On September 10th a hard drive was produced to us labeled

17  the -- hard drive number 4, which had already been produced.

18  We thought it was a duplicate.  We later found out -- counsel

19  later found out that it was not a duplicate and that it

20  contained one of the compilations of the copyrighted works that

21  Meta had used.  And so, that is now being analyzed.

22      **THE COURT:**  Could I -- Mr. Boies, can I interrupt you

23  for just a second?

24      **MR. BOIES:**  Yes.

25      **THE COURT:**  One of the things that troubled me about

1  your motion to extend the litigation deadlines was that it was

2  clear to me when I -- when we had our previous hearing, right,

3  that these delays were the fault of the Plaintiffs; and it is

4  clear from Judge Hixson's rulings; that he is convinced also

5  that the Plaintiffs have been dragging their feet and they have

6  not been pushing the case forward.

7      But in your -- in your renewed motion for an extension, it

8  seemed like all you were doing was blaming the Defendants for

9  delays, and I guess -- you know, I found that really hard to

10  swallow; and I find it really hard to entertain another request

11  to extend the discovery deadlines when all your side seems to

12  be doing is doubling down on this -- what I believe to be a

13  false assertion -- that Meta is stonewalling you.

14      I am -- I am more convinced than ever -- especially after

15  reading Judge Hixson's rulings -- discovery rulings -- that

16  this is either entirely or almost entirely the fault of the

17  Plaintiffs' legal team.

18      And so, I just -- I don't really know what to do with

19  that.  I have got -- you know, I have got a newly constituted

20  legal team in the Kadrey case that sort of generally,

21  theoretically I would have confidence in.

22      And, you know, generally if they were able to articulate

23  for me what more they need that they don't have and why, that

24  then I might be inclined to defer to.

25      But instead of filing a motion where you clearly

1    articulated what more it is that you need for adjudication of

2    the fair use issue and sort of give me a roadmap for how we can

3    get there, you're -- you know, instead of saying, "Sorry, we

4    didn't get it before but here is our plan for getting it now,"

5    you are again accusing Meta of stonewalling and I think falsely

6    accusing Meta of stonewalling.

7         And so, I'm left not knowing how to handle this renewed

8    motion for an extension.

9         **MR. BOIES:**  I appreciate the Court's difficulty there.

10   And I don't think that we would say that the problem is simply

11   Meta stonewalling.

12        I do think -- and maybe we have not made that record

13   adequately -- but I do think that there are substantial gaps in

14   what Meta has produced, and some of that stuff because of its

15   recent production we are not in a position to be absolutely

16   comprehensive about it.

17        I can give you some examples.  One of the issues is -- as

18   the Court is aware -- Meta has a series of versions of its

19   Llama product.

20        And we know we do not have all of the training materials

21   for the first, and we know that we do not have all of the

22   training materials for the most recent.  We are not able to

23   determine whether we have a lot of the training materials for

24   Llama 2, for example.

25        This is something that I think a 30(b)(6) deposition --

which we have scheduled, and as the Court is aware, we have
been given 16 hours to take -- I think we will reveal the
extent to which we are right that there is stuff that we don't
have or perhaps we are wrong.

With respect to the schedule, you know, as any Plaintiff,
we are anxious to move along; and I, you know, regret that we
are in the position that we are in right now.

Since we were brought on, we have devoted a very
substantial team to try to understand the documents that exist,
the documents that don't exist.  We have made a lot of progress
in that.

You know, I would -- I would say to the Court that I don't
think that you will have the record that would be desirable if
we try to wrap this up in two weeks.

I think that we can -- if we limit this to the fair use
issue -- and the Court on September 20th said that there were
five points that the Court believed were not disputed.  If
those points are not disputed and we limit this to fair use, I
think we can move very expeditiously.

Since the September 20th hearing and since we got
involved, Meta has at least been ambiguous as to whether their
summary judgment motion is going to be limited to fair use and
also ambiguous as to whether or not they dispute the five
points.  Those are two things that we think is very important
to understand before the Court sets the schedule.

1    The --

2        **THE COURT:**  Well, I mean, to be fair to them at the

3    last hearing, they made pretty clear that there was a good

4    chance that the summary judgment motion would not be limited to

5    fair use; right.

6        **MR. BOIES:**  But if that's the case, Your Honor, I

7    really think that the -- I mean, just -- and the Court knows

8    and I don't because I wasn't here -- but just looking at the

9    record that we reviewed, it looks like that what was the focus

10   of this was the belief -- maybe it was erroneous but it was the

11   belief on our part -- and I think the Court's part -- that this

12   was going to be limited to fair use.

13       If it is not going to be limited to fair use, one of the

14   things the Court said is we need to know what is going to be on

15   the agenda.  And although Meta increasingly says there is going

16   to be more than fair use, we still don't have a list of what

17   those issues are.

18       And again, I would urge the Court that before setting the

19   schedule, it's important that we know what the issues are for

20   summary judgment.

21       **MS. HARTNETT:**  Your Honor, if I may respond on that.

22       **THE COURT:**  Sure.

23       **MS. HARTNETT:**  Respectfully, I think some of what you

24   just heard is actually not accurate unfortunately including

25   that we have not provided a list of potential summary judgment

 1    arguments beyond fair use, which we expect to be the bulk of

 2    our summary judgment motion.

 3        We reserved the right on our call with Plaintiffs'

 4    Counsel -- that Mr. Boies was not on -- to potentially argue a

 5    standing issue, which would just be if someone's works are not

 6    in the data set or if they don't have right to the copyright.

 7    We could also just file a motion on that separately later if

 8    that is more straightforward.  There also could be a legal

 9    issue about whether something is copying or not.  We would

10    expect that to be brief.  There is not a mystery here about the

11    issues.

12        And I would move on to say on the issues about the

13    smattering of arguments being made about source code dumps or

14    whatever else, those are all -- I don't need to -- I'm happy to

15    get into the minutia because I know the facts on those.  The

16    hard drive, for example, was mislabeled by mistake.  They knew

17    what it was.  They actually have a 30(b)(6) topic on the drive,

18    so they know what it was.  It is not a mystery.

19        The source code production this week were pool requests

20    that they asked for as a supplement.  And the source code is a

21    red herring anyway because it is really not the point of the

22    fair use argument.

23        So, they do -- we have been working to get them what they

24    want.  They have it.  And I really think it is important to

25    note, the six depositions they have yet to take are on the

 1  topics that they claim to need more on.  They have one who is

 2  going to be knowledgeable about a data set other than books 3.

 3  They have that deposition.  They could take it.

 4      They have the -- they have the head of AI, the kind of

 5  leader in the AI development, Mr. LeCun.  They could take that

 6  deposition.  They have a person that has dealt with licensing

 7  issues.  They can take that deposition.

 8      So, they have refused to take three depos.  They have

 9  refused a date for another.  They have a 30(b)(6) that has not

10  actually been scheduled yet, but we are happy to schedule that.

11      And so from our perspective, they just need to take their

12  depositions.  We can finish up any cleanup issues with Judge

13  Hixson.  Those motions would be due on Monday.  So that's yet

14  another way in which they are using the time to re-argue the

15  schedule when they should just be doing the cleanup discovery

16  with Judge Hixson.

17      And if they have a problem with the source code

18  production, the right answer wasn't to come ask for more time

19  with you.  It was to actually bring a motion before Judge

20  Hixson and they haven't done that.

21          **THE COURT:**  Well, maybe they are doing that on Monday.

22          **MS. HARTNETT:**  Well, we haven't met and conferred on

23  anything.  And that's really important, Your Honor.  Judge

24  Hixson on our calls has been available on short notice.  He has

25  resolved everything promptly and on one of our last calls said,

1    "Tell me.  Is there more coming?  Tell me now.  I will get

2    ready for it."  One of those calls was attended by new counsel.

3        So, the notion that the right thing to do is to re-argue

4    the schedule over and over is wrong.  The right thing to do is

5    to take the depositions and go to Judges Hixson if there is a

6    problem with our production.

7            **THE COURT:**  Okay.

8            **MR. BOIES:**  Your Honor, I would -- I would suggest to

9    the Court that without an adequate record and without a class

10   certified, resolving the summary judgment for the named class

11   representatives is not a productive approach.

12       We are not asking for an extensive delay.  The delay that

13   we are asking for is not inconsistent with either keeping or

14   very closely keeping the summary judgment schedule.  We can

15   overlap some of the work that needs to be done.

16       But I think it will -- I think it is important that the

17   Court have an adequate record, and I think the Court recognizes

18   that the record that's been made right now is not adequate for

19   a decision that is going to have an ability maybe to put some

20   of these issues at rest.

21       You know, we can argue how we got here but we are where we

22   are right now; and -- and I think the Court knows that there is

23   not an adequate record here.

24       I think the Court knows that we are going to make an

25   effort very expeditiously to address these issues.  And if the

```
 1   only issues on other than fair use are standing and the legal

 2   issue of copying, if that's all that we are talking about and

 3   if the five issues that the Court said on the 20th that you

 4   thought were undisputed remain undisputed, this is something

 5   that we can move very expeditiously on; and we are committed to

 6   doing that, but it's not -- but with respect, it's not two

 7   weeks.

 8        You know, whether it is 60 days or 30 days or 90 days, you

 9   know, I think is something that people may be able to differ

10   on; but I would -- you know, we are not asking for six months.

11   We are also saying that two weeks isn't going to do it.

12        MS. HARTNETT:  Your Honor, if I may, on the issue that

13   Mr. Boies just raised about having the class come second would

14   not make sense.  That's actually the bifurcation that

15   Your Honor ordered at the beginning of this case.

16        So, the summary judgment is going to come before the class

17   because that's the schedule that you set.

18        And then to the extent we are talking about -- I just go

19   back to your order, and it derives from the good cause standard

20   itself.  What you said on the 20th of September is what the

21   rules require, which is that they come back with something that

22   is critical for the resolution of fair use.  They have to

23   identify something missing, and respectfully you have heard

24   that the record is horrible but nothing specific.

25        THE COURT:  Yeah.  I guess the -- their best argument,
```

1   which they haven't really made but I will sort of make for them

2   now, is that the Plaintiffs really messed up by not moving the

3   case forward in an expeditious fashion.

4        They found themselves stuck up against the discovery

5   cut-off and hadn't come close to doing the work that they

6   needed to do to get the case ready to be adjudicated.

7        New counsel has come in now with the ability and the

8   resources to get the case ready for adjudication, but they need

9   a little more time because they are new to the case -- you

10  know, they need a little more time to learn the case and learn

11  what's in the discovery record and then augment the discovery

12  record.

13       And it's an important case.  You know, it's a case that --

14  I mean, obviously, we are only in the district court; and what

15  happens in the district court is never all that important, but

16  it is an important case that needs to -- you know, we need a

17  ruling.

18       And, you know, it implicates not just Meta but all these

19  other companies and all these other authors.  And, you know, we

20  need a couple more months to make sure we are getting it right

21  now that a new legal time is in charge.

22       I mean, that I think is the argument for, you know,

23  extending this out a couple of months.  Again, we still have

24  got to figure out what we are doing with this other case.  That

25  would be the argument for extending this out for a couple of

months; to make sure that, you know, any holes in the discovery record can be filled before the matter is adjudicated.

    **MS. HARTNETT:**  Can I give you one example, though?  I hear you and I think that is somewhat the argument they have been making but not with the specificity that we believe Your Honor asked for at the last hearing, which could be developed if they -- you know, but we need that specificity.

    The source code is a good example.  The Plaintiffs' Counsel -- existing Plaintiffs' Counsel did not actually ask for source code in an RFP.  It is apparently now important to them.

    Meta provided the source code any way.  They have had it since May.  They have reviewed it.  My colleague can speak to it if necessary.

    So, there is an example of something where, okay, was that the best that could have been done?  Probably not.  Did we -- is the record actually okay?  Yes, it is.

    And I think that's really what I'm trying to underscore from my client's perspective here.  We are not trying to help the other side win, but we have been litigating in good faith providing the witness' availability.  We are here to complete discovery.

    And so, from our perspective two more months of getting a redo when a redo is not necessary -- there is not a record showing there is a redo necessary -- is unfair to us because

1  just yesterday we had our Vice President of AI sit for a

2  deposition all day.  That happened.  The other depositions

3  should happen.

4      So, I just -- I do think, sure, in some case could there

5  be a record where this is required a redo?  Yes.  Has the

6  record been made here that there should be a redo that good

7  cause exists?  I don't believe so.

8      A lot of aspersions have been cast.  General statements

9  have been made.  There is nothing that they have been pointing

10 to relative to the fair use analysis that they don't have or

11 won't get from the depositions coming up of six very key

12 witnesses to the dispute.

13     We believe that should happen.  You should give a little

14 more time for that to happen.  Hopefully their word means

15 something and we can get them done this time.  They can come

16 back later if they need to with good cause down the road, but

17 it shouldn't be an open season now.

18         **THE COURT:**  Yeah, I hear what you are saying.  Okay,

19 well, let me give all of this a little bit more thought.  And

20 obviously I would not make a decision about whether to stay the

21 second case or consolidate the second case into the first case

22 without giving you-all an opportunity to be heard further on

23 that right.

24     But let me -- let me give some thought to everything that

25 we have discussed so far and issue a ruling on the case

1    schedule.

2        And after I issue a ruling on the case schedule, we can

3    decide -- we can endeavor quickly to figure out what role this

4    second case is going to play, if any, in the adjudication of

5    the issues that we are scheduled to adjudicate.  All right.

6            **MR. BOIES:**  Thank you, Your Honor.

7            **THE COURT:**  Thank you.

8            **MS. HARTNETT:**  Thank you, Your Honor.

9            **MS. GEMAN:**  Thank you, Your Honor.

10              (Proceedings adjourned at 1:42 p.m.)

11                      ---oOo---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4          I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6

7   DATE:   October 7, 2024

8

9

10

11   _____

12          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
             United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25